[Cite as *Rubel v. Thomas*, 2026-Ohio-2704.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY


ELLEN RUBEL, et al.,                :

    Plaintiffs-Appellants,      :    Case No. 25CA17

    v.                          :

SCOTT C. THOMAS, et al.,            :    DECISION AND JUDGMENT ENTRY

    Defendants-Appellees.       :

_____

APPEARANCES:

Steven R. R. Anderson, Galena, Ohio, for appellant.

James T. Holt, IV, Ironton, Ohio, for appellees.
_____
CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:7-8-26
ABELE, J.

{¶1} This is an appeal from a Lawrence County Common Pleas Court judgment. Ellen Rubel, plaintiff below and appellant herein,[1] assigns the following errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ERRED IN HOLDING THAT APPELLANT ELLEN RUBEL'S EXPRESS UTILITY EASEMENT HAD BEEN ABANDONED."

---

[1] We observe that appellant's brother also was named as a plaintiff in the trial court proceedings. Additionally, his name appears on the pro se notice of appeal that appellant and her brother filed. The brother otherwise has not participated in the appellate proceedings. Moreover, appellant's counsel did not enter an appearance of counsel on behalf of the brother.

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN HOLDING THAT, EVEN IF THE EXPRESS UTILITY EASEMENT HAD NOT BEEN ABANDONED, EQUITY WOULD REQUIRE THAT MS. RUBEL NOT BE PERMITTED TO USE IT."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN REWRITING THE EXPRESS UTILITY EASEMENT RATHER THAN GIVING EFFECT TO THE WORDS IN THE EASEMENT."

{¶2} This case arises from an easement dispute. In 2013, appellant inherited property containing a house located adjacent to property later owned by Scott C. Thomas and Lesley Thomas, defendants below and appellees herein. The 1.64-acre tract that appellees presently own abuts a main road and sits in front of appellant's parcel. Years before appellees acquired their property, the property had been part of a larger tract that appellant's predecessor in interest owned.

{¶3} When appellant's predecessor in interest divided the parcel and conveyed the tract to appellees' predecessor in interest, the grantor reserved "the right to lay, relay, and maintain all existing utility lines as now located, October 1987, over and on said 1.64 tract." The grantor also reserved a 12-foot-wide right-of-way to maintain access to the property. A survey drawing of the two parcels depicts the location of the right-of-way, but does not depict the location of the utility easement.

{¶4} When appellant inherited the property, she did not live in Ohio, but she traveled to visit the property once per year or once every other year. Shortly after inheriting the property, appellant discontinued the natural gas supply. In 2015, appellant attempted to restore natural gas service. The gas company detected a leak in the service line and informed appellant that the line would need to be replaced before service could be restored. The gas company later removed the meter and connection line due to a lack of use.

{¶5} By December 2015, the home no longer had a water supply. When appellant investigated reconnecting the water supply to the home, she learned that the water service lines also would need to be replaced before service could be restored.

{¶6} Sometime in 2017 or 2018, appellees started to prepare their lot for the construction of an athletic complex. Before appellees began construction, the contractor contacted the utility companies to ask whether the property contained any active utility lines. After confirming that the property did not contain any active utility lines, appellees began to prepare the site for construction. In 2020, appellees poured concrete for a parking lot.

{¶7} On June 8, 2023, appellant filed a complaint for injunctive and monetary relief. In the complaint, appellant alleged that appellees wrongfully obstructed her easement for

water and natural gas utilities by building a concrete parking lot over her utility easement. Appellant alleged that appellees' actions caused damage to her utility lines and prevented her from being able to have natural gas and water service to her house.

{¶8} Thus, appellant requested the trial court issue an injunction to restrain appellees from closing, obstructing, and preventing the use of her utility easement. Appellant also sought damages for the cost to remove the concrete and to repair the utility lines.

{¶9} The case later proceeded to a trial before the trial court's magistrate. At trial, appellant attempted to establish that the utility easement referenced in the deed ran in a straight line from the main roadway, underneath what is now appellees' parking lot, to her house.

{¶10} Appellees, on the other hand, attempted to show that appellant did not actually know where the utility lines were located as of October 1987, the date contained in the deed granting the easement. They asserted that appellant could only speculate as to the location of the easement as it existed in October 1987. Appellees further sought to prove that appellant had abandoned any easement that may have existed underneath their parking lot.

{¶11} After hearing all of the evidence, the magistrate determined that appellant failed to establish the location of the utility lines as they existed in October 1987.  The magistrate found that the witnesses who offered testimony regarding the location of the utility lines relied upon assumptions, not documentary proof.

{¶12} The magistrate next concluded that appellant had abandoned the easement based upon the following findings:  (1) appellant had not used the water and gas utilities "for a number of years"; (2) in 2017, the gas company removed the meter and connection line due to a lack of use; (3) the gas company considered the line to be abandoned; (4) the water meter had been assigned to appellees due to appellant's nonuse; (5) appellees' contractor was advised that appellees' property did not contain any active utility lines; and (6) restoring service to appellant's property would require new utility service lines to be installed.

{¶13} The magistrate further decided that, even if appellant had not abandoned the easement, "equity would prevent the use of the easement where a much less expensive and less destructive alternative is available."  The magistrate concluded that appellant was entitled to an easement across appellees' property "as necessary to establish water and natural gas utility service to [appellant's] subject parcel . . . without the destruction,

reconstruction or disturbance of" appellees' concrete parking lot.

{¶14} Appellant objected to the magistrate's decision and asked the court to determine that she has an express easement that entitles her "to use [the] utility line easement from the meter location by the County Road and running straight back to [her] house." Appellant asked the court to award "damages to repair and relay the gas and water lines" in the amount of $42,500 and to issue an injunction to prevent appellees "from interfering with [appellant's] right to lay, relay and maintain such utility lines within the express easement."

{¶15} The trial court subsequently overruled appellant's objections to the magistrate's decision. The court found that the easement did not specifically define the location of the utility easement. The court further noted that none of the parties presented records to document "the location of any utility service lines to [appellant's] parcel over or on [appellees'] parcel as of the date specified in the easement, October 1987." The court concluded that appellant instead "assumed . . . that the previous utility lines ran directly from the taps and meters located near State Route 7 straight back to [her] parcel." The court thus determined that "[t]he evidence failed to establish the location of the utility lines as those lines existed in October of 1987."

**{¶16}** The trial court next found that appellant abandoned the utility easement.  The court stated that "[t]he utilities had not been used for a number of years."  The court recognized that nonuse was insufficient by itself to establish abandonment, but explained that "non-use may be accompanied by other factors and circumstances which either strengthen or weaken it."  The court found that the following factors favored a finding of abandonment:

> 1) Columbia Gas remov[ed] the meter and connection line in 2017 due to the lack of use and pursuant to Ohio law. Columbia Gas considered the line to be abandoned.  2) The water meter had been assigned to [appellees] due to [appellant's] non-use.  [Appellant's brother] commented several times [that appellees] had 'stolen his meter and mailing address'.  3) New utility services lines would need to be replaced in order for services to be restored. 4)  The contractor, Scott Riley, testified he contacted the utility company prior to any site work being performed and was advised there were no active utility lines on defendant subject property.

**{¶17}** The trial court also agreed with the magistrate's conclusion that, even if appellant had not abandoned the easement, "equity would prevent the use of the easement where a much less expensive and less destructive alternative is available."  The court thus granted appellant an easement "as necessary to establish water and natural gas utility service to [appellant's] subject parcel . . . without the destruction, reconstruction or disturbance of the concrete parking lot" located on appellees' property.  This appeal followed.

I

{¶18} In her first assignment of error, appellant asserts that the trial court erred by concluding that she had abandoned the easement.  She contends that the trial court did not correctly apply the law applicable to the abandonment of an easement.

{¶19} We initially observe that the question whether an easement holder has abandoned an easement is a question of fact. *Worthy v. Hawthorne*, 2025-Ohio-1941, ¶ 41 (4th Dist.); *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC*, 138 Ohio App.3d 57, 72 (4th Dist. 2000).  Thus, an appellate court will not disturb a trial court's abandonment finding so long as some competent, credible evidence supports it.  *Crane Hollow,* 138 Ohio App.3d at 72.

{¶20} "'An abandonment is proved by evidence of an intention to abandon as well as of acts by which the intention is put into effect; there must be a relinquishment of possession with an intent to terminate the easement.'"  *W. Park Shopping Ctr., Inc. v. Masheter*, 6 Ohio St.2d 142, 144 (1966), quoting *Dalton v. Johnson*, 320 S.W.2d 569, 574 (Mo. 1959).  Accordingly, to establish that the owner of a dominant estate has abandoned an easement, the owner of the servient estate must establish (1) nonuse of the easement, and (2) an intent to abandon the easement.  *See Crane Hollow,* 138 Ohio App.3d at 72; *Snyder v.*

*Monroe Twp. Trustees*, 110 Ohio App.3d 443, 457 (2d Dist. 1996). Thus, "[m]ere nonuse of an easement is generally insufficient to establish abandonment." *Penn v. Esham*, 2008-Ohio-3695, ¶ 13 (4th Dist.). Instead, nonuse must be coupled with an intent to abandon the easement.

{¶21} "Intent to abandon an easement must be 'demonstrated by "unequivocal and decisive acts" inconsistent with continued use and enjoyment of the easement.'" *Crane Hollow*, 138 Ohio App.3d at 72, quoting *Snyder v. Monroe Twp. Trustees*, 110 Ohio App.3d 443, 458 (2nd Dist. 1996), quoting *Warner v. Thompson*, 1993 WL 386252, *2 (12th Dist. Sept. 27, 1993); *accord Bauerbach v. LWR Ents., Inc.*, 2006-Ohio-4991, ¶ 19 (4th Dist.). "'An intention to abandon may be inferred where the owner of the easement does, or permits to be done, any act inconsistent with its future enjoyment.'" *Hiener v. Kelley*, 1999 WL 595363, *11 (4th Dist. July 23, 1999), quoting 36 Ohio Jur.3d, Easements and Licenses, § 87, at 493 (1982).

{¶22} In the case at bar, even if the trial court erred by determining that appellant had abandoned the easement, we do not believe that the trial court's judgment must be reversed. Instead, the trial court provided an alternative rationale for deciding the case. The court concluded that, even if appellant had not abandoned the easement, equitable principles prevented enforcing the easement as appellant requested. The court noted

that enforcing the easement as appellant requested would require the excavation of appellees' parking lot. The court determined that appellant could obtain the use of the easement—the relaying of utility service lines—without disturbing appellees' parking lot. As we explain in our discussion of appellant's second assignment of error, the trial court appropriately exercised its equity jurisdiction, and we may uphold its judgment under this alternative rationale.

{¶23} Thus, even if we agreed with appellant that the trial court incorrectly determined that she abandoned the easement, we do not believe that this alleged error would mandate a reversal of the trial court's judgment. *See* App.R. 12(B) (requiring affirmance when "the trial court committed no error prejudicial to the appellant"); Civ.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). In other words, even if appellant did not abandon the easement, the trial court was not required to enter a judgment that granted appellant the right to dig up appellees' parking lot and install new utility lines underneath their parking lot.

{¶24} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

                                   II

{¶25} In her second assignment of error, appellant asserts that the trial court erred by determining that, even if she had not abandoned the easement, "equity would prevent the use of the easement where a much less expensive and less destructive alternative is available." She contends that the trial court's equitable determination is flawed because the court's solution is only less expensive and less destructive for appellees, not for her. Appellant argues that appellees' conduct in installing a concrete parking lot over her alleged easement leaves her "in a materially worse position no matter which way you cut it." She states that relaying the utility lines requires her to "either excavate and then repair [appellees'] parking lot, or else she must pay to have the lines re-laid along a longer and more expens[ive] route around it." Appellant claims that "[e]ither option is more expensive than simply laying new lines along the existing, unobstructed easement."

                                   A

{¶26} We initially observe that an "injunction is an extraordinary remedy equitable in nature," and thus, "its issuance may not be demanded as a matter of strict right." *Perkins v. Village of Quaker City*, 165 Ohio St. 120, 125 (1956). Instead, "[t]he grant or denial of an injunction is solely within the trial court's discretion and, therefore, a reviewing

court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion." *Garono v. State*, 37 Ohio St.3d 171, 173 (1988); *see Perkins* at 125 ("An application for an injunction is addressed to the sound discretion of the court, and its allowance is a matter of grace." [citation omitted]). An abuse of discretion implies that a court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Beasley*, 2018-Ohio-16, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "[A]n 'arbitrary' decision is one made 'without consideration of or regard for facts [or] circumstances.'" *Beasley* at ¶ 12, quoting *Black's Law Dictionary* (10th Ed.2014), and citing *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981), quoting *Black's* (5th Ed.1979) ("arbitrary" means " 'without adequate determining principle; . . . not governed by any fixed rules or standard' "). An unconscionable decision is one "showing no regard for conscience" or "affronting the sense of justice, decency, or reasonableness." *Black's* (11th ed. 2019). An unconscionable decision also may be characterized as "[s]hockingly unjust or unfair." *Id.* The abuse of discretion standard is deferential and does not permit an appellate court

to simply substitute its judgment for that of the trial court. *See State v. J.B.*, 2026-Ohio-1405, ¶ 13, citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

B

{¶27} A court may issue an injunction to rectify an irreparable injury when legal remedies, such as monetary damages, are inadequate. *See Haig v. Ohio State Bd. of Edn.*, 62 Ohio St.3d 507, 510 (1992) ("An injunction is an equitable remedy and will not lie where there is an adequate remedy at law."). An injunction may be mandatory or prohibitory. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 2008-Ohio-1593, ¶ 12. A prohibitory injunction prevents a future injury "by enjoining a defendant from performing the challenged acts in the future." *Id.* On the other hand, a mandatory injunction is an extraordinary remedy that a court may issue to cure a past injury. *Id.* A mandatory injunction compels "a party to restore a status which he has wrongfully changed." *Gratz v. Lake Erie & W.R. Co.*, 76 Ohio St. 230, 233 (1907); *see State ex rel. Gen. Motors Corp.* at ¶ 12 (a mandatory injunction "compels the defendant to restore a party's rights through an affirmative action"); *Black's Law Dictionary* (12th ed. 2024) (defining a mandatory injunction as one "that compels a party to do some act or mandates a specified course of conduct"). "[A] mandatory injunction can be issued, for instance, to order removal of an

encroachment from neighboring property."  *Martin v. Lake Mohawk Property Owner's Assn.*, 2005-Ohio-7062, ¶ 49 (7th Dist.). Additionally, "[t]he owner of an easement, in a proper case, may obtain a mandatory injunction to remove an obstruction of the easement . . . ."  36 Ohio Jur.3d, Easements and Licenses, § 75; *see Warsaw v. Chicago Metallic Ceilings, Inc.*, 35 Cal.3d 564, 572 (1984) ("there is extensive authority standing for the proposition that a court of equity may, in a proper case, issue a mandatory injunction for protection and preservation of an easement including, where appropriate, an order for removal of an obstruction already erected" [citations omitted]).

{¶28} In the case at bar, we first point out that appellant's requested relief for an injunction is in the nature of a mandatory injunction.  She did not seek to prevent a future injury but, instead, sought to remedy a past injury.  Appellant asked the court to order the removal of the portion of appellees' concrete parking lot that she alleged encroached upon her underground utility easement.  We therefore review the trial court's judgment that rejected appellant's particular request for an injunction as a judgment that denied a request for a mandatory injunction.

{¶29} Given "the drastic character of mandatory injunctions," equitable considerations carry "special force." *Miller v. West Carrollton*, 91 Ohio App.3d 291, 296 (2d

Dist.1993). "[T]he court will balance the equities between the parties and consider the benefit to the plaintiff of a mandatory writ as against the inconvenience and damage to the defendant, and award relief accordingly." *Id.* at 297. A trial court that is evaluating a party's request for a mandatory injunction thus should engage in a balancing process "to consider and weigh the relative conveniences and comparative injuries to the parties which would result from the granting or refusal of injunctive relief." *Id.* at 296; *accord Skinkiss v. Gleeson*, 2008-Ohio-356, ¶ 12 (12th Dist.); *Old Mill Village Homeowners Assn. v. Bacik*, 1993 WL 27416, *2 (9th Dist. Feb. 3, 1993) (courts generally "balance the relative hardships to the parties in devising an appropriate equitable remedy").

{¶30} When a party asks a court "to undo something that has been done, [the court] must, for obvious reasons, act in a careful and conservative manner and grant the relief only in situations which so clearly call for it as to make its refusal work a real and serious hardship and injustice." *Miller*, 91 Ohio App.3d at 296. Thus, when "the expense and difficulty of removal of an encroachment would be great and the encroachment" causes "minimal damage to the plaintiff, or its removal would result in little benefit to him, a mandatory injunction is not required." *Old Mill Village*, 1993 WL 27416, at *2 (9th Dist.); *see also Perkins*, 165 Ohio St. at 125 (1956), quoting *Bray v.*

*Ocean City R. Co.*, 37 A. 604, 605 (N.J.Ch. 1897) ("'an injunction will not be granted if it will cause great injury to the defendants, without corresponding advantage to the complainant'"); *Clough v. W.H. Healy Co.*, 53 Cal.App. 397, 400-01 (Cal.App. 1921) (a court should deny a request for a mandatory injunction to remove an easement obstruction "when the obstruction does not constitute a material interference with the right of the owner of the easement, or where the damage sustained by him is merely nominal" or when the expense entailed by removing the obstruction "would be entirely disproportionate to the benefit resulting"). In accordance with these general principles, courts generally find it inequitable to order a property owner to destroy costly improvements, especially when the owner did not act willfully. *See Miller*, 91 Ohio App.3d at 298 (observing that courts typically deny injunctions when the offending party's conduct was not "willful but the result of accident or mistake, without undue haste and without actual knowledge of the restriction"); *see also Brady v. Haines*, 2021-Ohio-4565, ¶ 6, 13-14 (3d Dist.) (upholding the trial court's denial of a mandatory injunction ordering a property owner to remove an encroachment when the evidence did not show that the owner acted willfully or that the encroachment affected the complaining party's ability to farm the land); *Martin*, 2005-Ohio-7062, at ¶ 50 and 54 (7th Dist.) (determining that the

complaining party was not entitled to a mandatory injunction ordering the offending party to destroy a home due to allegations of an obstructed lake view when the offending party's conduct was not willful); *Old Mill Village*, 1993 WL 27416, at *2 (9th Dist.) (upholding the trial court's refusal to grant an injunction requiring a homeowner to remove a deck that encroached on to another's property by nine inches).

{¶31} In the case sub judice, we do not believe that the trial court abused its discretion by determining that appellant should not be entitled to an injunction that ordered appellees to remove the concrete parking lot that allegedly obstructed her easement. First, we observe that the trial court did not make any finding that appellees' conduct was willful. Appellees stated that they were unaware of appellant's utility easement. Furthermore, before appellees constructed the parking lot, their contractor contacted the utility companies and confirmed that the property did not contain any active utility lines. Although appellant claims that appellees knowingly paved over her alleged easement, the trial court evidently did not agree.

{¶32} Moreover, the expense entailed by excavating and repairing appellees' parking lot would be entirely disproportionate to any resulting benefit to appellant. Appellant presented evidence to indicate that installing the service lines underneath appellees' parking lot would cost

$42,500. This amount includes excavating appellees' parking lot, installing the new utility lines, and repairing appellees' parking lot. The evidence further suggests that the cost of excavating and repairing the concrete parking lot alone would be around $20,000. Thus, the expense entailed by excavating and repairing appellees' parking lot, on its own, appears to be around $20,000.

{¶33} Excavating the parking lot would give appellant a place to install new utility lines. The evidence does not, however, suggest that appellant must install the utility service lines beneath appellees' parking lot or that she would obtain some special benefit by installing the utility service lines beneath appellee's parking lot. Indeed, both she and appellees submitted estimates that depicted the costs involved in routing the utility lines around the parking lot.

{¶34} Appellant presented evidence to show that installing the gas lines on the right side of appellees' property would cost $10,750, and installing the water lines on the left side of appellees' property would cost $8,500. Appellees presented evidence that running the gas line underneath their parking lot—without the presence of the concrete parking lot—would cost around $3,500, and installing the gas line around the parking lot would cost about $400 more, i.e., $3,900. Appellees'

evidence further showed that installing a new water line would have cost about the same amount.

{¶35} This evidence shows that installing the utility lines in a location other than beneath appellees' parking lot is feasible and that appellant would have the ability to continue to use the easement.  Furthermore, appellant's two estimates for routing the utility lines around appellees' parking lot ($10,750 and $8,500) total less than half of the amount required to install the utility lines beneath appellees' parking lot ($42,500).  Thus, the expense of excavating and repairing appellees' parking lot does not appear to be necessary for appellant to continue enjoying the use of her easement. Furthermore, installing the utility lines beneath appellees' parking lot or around the parking lot would give appellant the same benefit—water and gas supply to her house.  Nothing in the record suggests that the benefit of allowing appellant to dig up appellees' parking lot and install utility service lines beneath it outweighs the costs associated with excavating and repairing appellees' parking lot.

{¶36} Appellant claims, however, that the trial court's remedy is more expensive for her.  She suggests that the added expense of installing utility lines around the parking lot does not outweigh the expense and inconvenience of digging up appellees' parking lot.  As we noted above, appellant's evidence

shows that her request to install the lines underneath appellees' parking lot would have cost $42,500. She did not present evidence to show what the cost would have been to install the lines in the same location were it not for the parking lot. Appellees' evidence showed that installing the gas line underneath the parking lot, as appellant requested, would have cost around $3,500, and installing the gas line around the parking lot would have cost about $400 more, i.e., about $3,900. Although $400 is not an insignificant sum, we observe that the evidence presented at trial indicated that excavating appellees' parking lot and replacing the concrete alone would have cost around $20,000. Thus, not only would digging up the parking lot be disruptive, it also would cost significantly more than installing the utility lines around the parking lot. And even though running the utility lines around the parking lot evidently would cost more money, the evidence fails to indicate that the amount of money (around $400) would have been close to or greater than the amount of money needed to dig up and repair appellees' parking lot.

{¶37} Appellant nevertheless contends that the trial court's remedy may leave her without any access to gas and water utilities. She states that neither the gas nor the water company was made a party to the proceeding, and nothing in the record shows that either company would be able to install new

service lines in accordance with the trial court's decision.  We observe, however, that appellant did not raise this particular issue when she objected to the magistrate's decision.  Instead, she raises it for the first time on appeal.  Under these circumstances, she has waived the right to present it on appeal.  *See Redmond v. Wade*, 2017-Ohio-2877, ¶ 31 (4th Dist.) (the failure to state with particularity all grounds for objection results in a waiver of those particular issues on appeal); *accord State ex rel. Muhammad v. State,* 2012-Ohio-4767, ¶ 3 (a party waives an argument on appeal if the party failed to specifically raise that issue in objections to the magistrate's decision).

{¶38} In sum, we do not believe that the trial court abused its discretion by rejecting appellant's request for an injunction that ordered appellees to remove the part of their parking lot that would have allowed appellant to install new utility service lines beneath the parking lot.  Instead, the trial court appropriately exercised its equity jurisdiction to devise a solution that appeared to have the least amount of disruption to appellees' property at the lowest cost, without lessening the utility of the easement or frustrating the purpose for which the easement was created.  *See generally* Kuehnle, Levey, and Bower, *Ohio Real Estate Law*, § 26:18, quoting Restatement of the Law 3d, Property, Servitudes, § 4.8(3) (2000)

(stating that the owner of the servient estate may relocate an easement as long as the relocation does not "'(a) significantly lessen the utility of the easement, (b) increase the burden on the owner of the easement in its use and enjoyment, or (c) frustrate the purpose for which the easement is created'").

{¶39} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

                                III

{¶40} In her third assignment of error, appellant contends that the trial court erred by rewriting the easement, rather than enforcing the easement as written.

{¶41} "When an easement is created by an express grant, . . . the extent of and limitations on the use of the land depend on the language in the grant." *State ex rel. Wasserman v. Fremont*, 2014-Ohio-2962, ¶ 28. "The language of the easement, considered in light of the surrounding circumstances, is the best indication of the extent and limitations of the easement." (Citations omitted.) *Id.* Thus, courts first must review the "plain and ordinary meaning" of the language used in the easement "unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 245-46 (1978); *see Koprivec v. Rails-to-Trails of*

*Wayne Cty.*, 2018-Ohio-465, ¶ 24 (courts must interpret deeds using plain language contained in the document).

{¶42} Furthermore, when the language of the easement is clear and unambiguous, courts "cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Buckeye Pipe Line Co.*, 53 Ohio St.2d at 246; *accord Esteph v. Grumm*, 2008-Ohio-1121, ¶ 10 (4th Dist.) ("[w]hen the language granting an easement is clear and the delineation of the easement is unambiguous, we presume that the deed expresses the intent of the parties, and we need not go beyond that language in determining the scope of the easement"); *Murray v. Lyon*, 95 Ohio App.3d 215, 219 (9th Dist.1994) ("[i]f the intent is plain from the face of the document, then it is not necessary to resort to rules of construction to determine the easement's effect"). An easement "is unambiguous if it can be given a definite legal meaning." (Citation omitted.) *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11. On the other hand, the language of an easement may be ambiguous if it is "susceptible to more than one reasonable interpretation." *Motorists Mut. Ins. Co. v. Ironics, Inc.*, 2022-Ohio-841, ¶ 68.

{¶43} "[T]he initial determination of whether an ambiguity exists presents an abstract legal question, which [appellate courts] review on a de novo basis." *Pierron v. Pierron*, 2008-

Ohio-1286, ¶ 8 (4th Dist.), citing *Stewart v. Stewart*, 1992 WL 388546, *2 (4th Dist. Dec. 22, 1992); *accord Ayersville Water & Sewer Dist. v. Geiger*, 2012-Ohio-2689, ¶ 31 (3d Dist.) ("[w]hether the easement's language was sufficiently definite to establish its location is a question of law that is reviewed de novo upon appeal").  If ambiguity exists, "then the determination of what the actual terms were becomes a question of fact."  *Lake Erie Towing v. Troike*, 2006-Ohio-5115, ¶13 (6th Dist.).  In the absence of ambiguity, the interpretation of an express easement is a question of law subject to de novo review. *See Corder v. Ohio Edison Co.*, 2020-Ohio-5220, ¶ 25, citing *Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, paragraph one of the syllabus.

{¶44} When an easement fails to contain unambiguous language describing the precise location of the utility easement, the location and dimension of the easement generally "are those reasonably necessary for enjoyment of the servitude."  Kuehnle, Levey, and Bower, *Ohio Real Estate Law*, § 26:18, citing Restatement of the Law 3d, Property, Servitudes, § 4.8(2) (2000); *see Roebuck v. Columbia Gas Transm. Corp.*, 57 Ohio App.2d 217, 224 (2d Dist. 1977), quoting 18A Ohio Jur.2d, Easements, § 51 ("'if an easement is not specifically defined, the rule is that its extent is only such as is reasonably necessary and convenient for the purpose for which it was

created'"). In addition, "without a specific delineation of the easement in the instrument, courts may look to other circumstances to ascertain the intention of the parties and determine the scope of the easement." *Columbia Gas Transm. Corp. v. Bennett*, 71 Ohio App.3d 307, 318 (2d Dist. 1990); *accord Hoover v. Pfeifer*, 2025-Ohio-4909, ¶ 57 (3d Dist.) ("If there is no specific delineation of the easement in the instrument, or if the delineation is ambiguous, then a court may look to other circumstances to ascertain the intent of the parties or fashion a reasonable interpretation of the easement."). Thus, for example, when "an instrument is silent on the width and depth to be given a gas pipeline easement, a court may define its scope by what is reasonably necessary and convenient to accomplish the purpose for which the easement was granted." *Bennett*, 71 Ohio App.3d at 318.

**{¶45}** In the case at bar, the easement granted the owner of the dominant estate "the right to lay, relay, and maintain all existing utility lines as now located, October 1987, over and on said 1.64 tract." The trial court did not believe that appellant had presented competent and credible evidence to establish the location of the lines as of October 1987. The court instead determined that appellant's evidence rested upon assumptions, not proof.

{¶46} The trial court's finding that the exact location of the easement cannot be accurately determined is supported by competent, credible evidence.  Thus, given the ambiguity, the trial court appropriately defined the easement as granting the right to lay, relay, and maintain utility lines as reasonably necessary to accomplish the purpose for which the easement was granted, without destroying, reconstructing, or disturbing appellees' parking lot.  Consequently, because the easement as written was ambiguous regarding its location, appellant's assertion that the trial court erred by failing to enforce the easement as written is without merit.

{¶47} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
    Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.